UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WINDWARD BORA LLC,

Plaintiff,

-against-

ROYSTON D. BROWNE and
CONSTANCE R. BROWNE,

Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 03/31/2023

20-CV-4748 (BCM)

**OPINION AND ORDER**

Plaintiff Windward Bora LLC (Windward), a debt buyer, brought this diversity action in 2020 against two borrowers, defendants Royston D. and Constance R. Browne (the Brownes), to recover on a junior note signed by the Brownes in 2005 and originally secured by a junior mortgage on real property in the Bronx. Now before the Court are the parties' cross-motions for summary judgment. (Dkts. 69, 96.)

The Brownes stopped making payments on the junior note in 2008. Eight years later, Windward's predecessor-in-interest, Gustavia Home LLC (Gustavia), made multiple efforts to pursue its equitable remedies against them. In 2016, Gustavia attempted (unsuccessfully) to prevent the senior mortgagee from foreclosing on the mortgaged property in state court. It then brought its own foreclosure action on the junior mortgage, in this District, and in 2018 it obtained a federal foreclosure judgment against the Brownes. In 2019, the property was sold at auction. Later that year, Gustavia sold the junior note to Windward for $100.

Because Windward's predecessor-in-interest prevailed against the Brownes in an action in equity, and because Windward failed to seek leave of court before it filed a new action for damages on the same debt, as required by New York law, the Brownes' motion for summary judgment will be granted, and this action will be dismissed. Even if the Brownes were not entitled to summary judgment in their favor, unresolved factual issues would preclude the award of a money judgment in Windward's favor.

I.      **BACKGROUND**

A.      **Factual Background**

The facts summarized below, which unless otherwise noted are undisputed, are taken from:

(i)     plaintiff's Statement of Material Facts, filed pursuant to Local Civil Rule 56.1 in support of plaintiff's summary judgment motion (Pl. 56.1 St.) (Dkt. 75), and its underlying evidentiary materials, including the declaration of Seth D. Weinberg, Esq. (Weinberg Decl.) (Dkt. 70) and its separately-filed exhibits (Weinberg Decl. Exs.) (Dkt. 71), the affidavit of Yonel Devico (Devico Aff.) (Dkt. 73) and its attached exhibits, and the Affirmation of Mailing Procedures for Default Notices of Alan Weinreb (Mailing Aff.) (Dkt. 74) and its attached exhibits;

(ii)    defendants' Rule 51.6 Counter-Statement, filed in opposition to plaintiff's motion (Def. 56.1 Counter-St.) (Dkt. 81);

(iii)   defendants' Affidavit in Opposition to plaintiff's motion, signed jointly by both defendants (Dkt. 79), and its attached exhibits;

(iv)    defendants' Statement of Material Facts, filed pursuant to Local Civil Rule 56.1 in support of their own summary judgment motion (Def. 56.1 St.) (Dkt. 100), and its underlying evidentiary materials, including the affirmation of Joseph A. Altman, Esq. (Altman Aff.) (Dkt. 98), and its separately-filed exhibits (Altman Aff. Exs.) (Dkt. 94-1);[1]

---

[1] Both plaintiff and defendants had difficulty filing their motion papers in conformity with this District's Electronic Case Filing Rules & Instructions (ECF Rules), and in some instances were required to refile their papers multiple time, resulting in non-consecutive and out-of-sequence docket numbers. For example, defendants initially filed all of their moving papers on May 24, 2022, as a single docket entry with multiple sub-parts. (Dkt. 68.) They refiled those papers on August 26, 2022 (Dkt. 94), to correct their "filing error" (Dkt. 94-2), and again on August 30, 2022. (Dkt. 95.) However, these correction attempts drew deficiency notices from the Clerk of Court, apparently because defendants once again failed to file their supporting documents separately. (Dkts. 94, 95.) Defendants finally succeeded – on September 3, 2022 – in separately refiling their Notice of Motion, the Altman Affirmation, their Memorandum of Law, and their Rule 56.1 Statement. (Dkts. 96, 98, 99, 100.) For unknown reasons, however, they never refiled a complete

(v)     plaintiff's Rule 56.1 Counter-Statement, filed in opposition to defendants' motion (Pl. 56.1 Counter-St.) (Dkt. 82);

(vi)     the declaration of Seth D. Weinberg, Esq., filed in opposition to defendants' motion (Weinberg Opp. Decl.) (Dkt. 83), and its attached exhibits;

(vii)     the affirmation of Rafi Hasbani, Esq., filed in opposition to defendants' motion (Hasbani Aff.) (Dkt. 85); and

(viii)   the reply affirmation of Joseph A. Altman, Esq., filed in further support of defendants' motion (Dkt. 89), and its attached exhibits.

In accordance with *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991), the Court has also taken judicial notice of the pleadings and other papers filed in *Gustavia Home, LLC v. Brown, et al.*, No. 16-CV-9318 (JMF) (S.D.N.Y.) (the Federal Foreclosure Action), in which Gustavia obtained a Judgment of Foreclosure and Sale against the Brownes (the Federal Foreclosure Judgment) (Dkt. 81 in 16-CV-9318) on July 16, 2018.[2]

## 1.     The Parties

Plaintiff Windward is a Delaware limited liability company. Pl. 56.1 St. ¶ 1. Yonel Devico, who is its sole member, was, at the time this action was filed, a citizen of Morocco and a legal permanent resident of the United States. *Id.*; *see also Windward Bora, LLC v. Barrie*, 2022 WL 4485149, at *2 (E.D.N.Y. Sept. 27, 2022) (determining that Devico was a Moroccan citizen until July 20, 2022, when he was naturalized as a U.S. citizen).[3]

---

set of Exhibits A through W, which were supposed to be annexed to the Altman Affirmation. (Dkt. 98.) A complete set of those exhibits remains available at Dkt. 94-1.

[2] Some but not all of the relevant filings in the Federal Foreclosure Action have been submitted to this Court as attachments to the parties' summary judgment papers. For the sake of consistency, however, this Opinion and Order identifies all such filings as "Dkt. __ in 16-CV-9318."

[3] Plaintiff asserts that Devico was domiciled in Florida when this action was filed. Pl. 56.1 St. ¶ 1. Defendants "dispute this statement," Def. 56.1 Counter-St. ¶ 1, pointing to documents suggesting

The Brownes are citizens of New York, residing in Hartsdale, New York. Pl. 56.1 St. ¶ 2; Amended Answer (Am. Ans.) (Dkt. 28) ¶ 3. In 2005, they purchased a building at 1723 Taylor Avenue, in Bronx County, New York (the Subject Property), as an investment property. Weinberg Decl. Ex. D (R. Browne Dep. Tr.) at 11:16-12:12; Weinberg Decl. Ex. E (C. Browne Dep. Tr.) at 13:1-6.

### 2.     The Junior Note

On July 21, 2005, the Brownes obtained a loan in the principal amount of $536,000 from First Estate Funding Corp (FEFC), evidenced by a note executed in favor of FEFC (the Senior Note), and secured by a mortgage on the Subject Property (the Senior Mortgage). *See* Declaration of Joyce A. Davis, Esq. (Davis Decl.) (Dkt. 50 in 16-CV-9318) Ex. C, at ECF p. 4. The Senior Mortgage was recorded in the Office of the City Register of the City of New York, Bronx County (City Register). *Id.* at ECF p. 2.

On the same day, the Brownes obtained a second loan in the principal amount of $100,500 from FEFC, evidenced by a note (the Junior Note) in favor of FEFC. Pl. 56.1 St. ¶ 3; Def. 56.1 Counter-St. ¶ 3 ("undisputed"); *see also* Devico Aff. Ex. A (Junior Note). The Junior Note was secured by a junior mortgage (the Junior Mortgage) on the Subject Property. *See* Davis Decl. Ex. D, at ECF pp. 4-12 (Junior Mortgage). The Junior Mortgage was recorded with the City Register on September 6, 2005. *See id.* at ECF p. 2. The Junior Note required the Brownes to make monthly

---

that Devico lived in New York City in 2018 and owned a condominium in Levittown, New York in 2020. *See* Altman Aff. Exs. T (Dkt. 94-1 at ECF pp. 226-28), U (Dkt. 94-1 at ECF pp. 230-39). Neither of these documents raises a genuine dispute of fact as to Devico's domicile on June 19, 2020. In any event, Devico's domicile is irrelevant to this Court's diversity jurisdiction (and hence immaterial to any issue now before this Court), because "LLCs take on the *citizenship*, rather than domicile, of their members." *Windward Bora v. Barrie*, 2022 WL 4485149, at *3 (emphasis in original) (holding that for diversity purposes Windward Bora was a citizen of Morocco until July 20, 2022, regardless of where Devico was domiciled). *See* Part II.B, *infra*.

payments of $772.76 starting on September 1, 2005, until August 1, 2035. Junior Note § 3(A)-(B). The terms of the Junior Note are governed by the Junior Mortgage. *See* Junior Note § 10. The Junior Mortgage, in turn, is governed by "the state and local law that applies in the place that the [Subject] Property is located," that is, New York. Junior Mortgage at ECF p. 8.

The Senior Mortgage and Senior Note passed hands many times.[4] So did the Junior Mortgage and Junior Note. On July 21, 2005 (the day the documents were signed), FEFC assigned them to Lehman Brothers. Davis Decl. ¶ 3 & Ex. B, at ECF p. 2. On July 6, 2006, Lehman Brothers assigned them to MERS. *Id.* at ECF p. 4. On July 27, 2016, MERS assigned them to 20 Cap Fund I, LLC (20 Cap Fund). *Id.* at ECF p. 6. On September 16, 2016, 20 Cap Fund transferred the Junior Mortgage and Junior Note to Gustavia. *Id.* at ECF p. 9. Gustavia, like Windward, is a single-member LLC whose sole member is Devico. Def. 56.1 St. ¶ 4; Pl. 56.1 Counter-St. ¶ 4. Each of these transactions was recorded with the City Register. *See* Davis Decl. Ex. B.

Finally, Gustavia sold the Junior Note to Windward for $100, pursuant to a Money Purchase Loan Agreement (the MPL Agreement) dated and effective as of November 1, 2019. Altman Aff. Ex. K (Dkt. 94-1 at ECF pp. 155-63) (MPL Agreement).[5] Windward received physical possession of the Junior Note on November 2, 2019. Pl. 56.1 St. ¶ 4. Its counsel took possession of the "original collateral file" containing the Junior Note on July 9, 2021, and was in possession of it when this action was commenced. Devico Aff. ¶ 9.[6]

---

[4] FEFC assigned the Senior Mortgage and Senior Note to Lehman Brothers Bank, FSB (Lehman Brothers), which assigned them to Mortgage Electronic Registration Systems, Inc. (MERS), which assigned them to Aurora Loan Services, LLC (Aurora), which assigned them to Nationstar Mortgage LLC (Nationstar). *See* Davis Decl. ¶ 2 & Ex. A.

[5] As discussed Part I.A.4, *infra*, the Junior Mortgage had by this point been foreclosed.

[6] Defendants "dispute this statement," Def. 56.1 Counter-St. ¶ 4, on the ground that the Junior Note was endorsed to Gustavia (and not further endorsed by Gustavia to Windward), and that the assignment from Lehman Brothers to MERS was "robo-signed" on behalf of Lehman Brothers. *Id.*

### 3.     The Brownes' Default

It is not clear exactly when the Brownes stopped making payments on the Junior Note. The evidence, however, points to 2008. Plaintiff relies on a "Pay History" showing that defendants made their last payment on August 1, 2008, defaulted on their payment due September 1, 2008, and likewise defaulted on each payment thereafter. Devico Aff. ¶ 7 & Ex. B (Pay History). If the Pay History is accurate, the remaining principal balance on the Junior Note as of the first missed payment was $98,031.31. Devico Aff. Ex. B. However, Windward did not create the Pay History, and neither Devico nor Windward's corporate designee, Eitan Korb, was able to say who created it or whether it was accurate. *See* Altman Aff. Ex. D (Dkt. 94-1 at ECF pp. 19-44) (Devico Dep. Tr.) at 52:18-54:25; Altman Aff. Ex. E (Dkt. 94-1 at ECF pp. 73-85) (Korb Dep. Tr.) at 74:6-75:22.

Mr. Browne testified that defendants defaulted on both mortgages in "the early part of 2008." R. Browne Dep. Tr. at 19:6-10. Ms. Browne could not recall "when we stopped paying." C. Browne Dep. Tr. at 49:7-8.

### 4.     The State and Federal Foreclosure Actions

On June 5, 2009, Aurora, which at that time held the Senior Mortgage and the Senior Note, brought an action to foreclose on the Subject Property in New York State Supreme Court, Bronx County, entitled *Aurora Loan Services, LLC v. Browne, et al.*, No. 381143/2009 (N.Y. Sup. Bronx Cty.) (the State Foreclosure Action). Def. 56.1 St. ¶ 11; Altman Aff. Ex. F (summons and complaint in State Foreclosure Action). The defendants in the State Foreclosure Action were the Brownes; plaintiff's predecessor MERS (which at that time held the Junior Mortgage and the Junior

---

Neither of these points creates a material dispute of fact as to Windward's receipt and physical possession of the Junior Note.

Note); and various other defendants with "some interest in or lien upon" the Subject Property. Altman Aff. Ex. F, at ECF p. 90. All of the defendants in the State Foreclosure Action (including MERS) failed to answer, and an Order of Reference was entered. *See* Davis Decl. ¶ 9 & Ex. H.

Six years later, on November 17, 2016, Gustavia (which by then had acquired the Junior Mortgage and Junior Note) moved to vacate the Order of Reference. Davis Decl. Ex. H; *see also* Weinberg Opp. Decl. Ex. I, at ECF p. 28. On December 2, 2016 (while its motion to vacate was pending in the State Foreclosure Action), Gustavia filed the Federal Foreclosure Action, initially seeking both a money judgment on the Junior Note and a judgment of foreclosure on the Junior Mortgage. *See* Gustavia Compl. (Dkt. 1 in 16-CV-9318) ¶¶ 1, 27-48; Gustavia Am. Compl. (Dkt. 19 in 16-CV-9318) ¶¶ 1, 27-48.[7] The defendants in the Federal Foreclosure action were the Brownes; Nationstar (which by then had acquired the Senior Mortgage and Senior Note); and various other defendants "having or claiming an interest in or lien upon" the Subject Property. Gustavia Am. Compl. at ECF p. 1.

Gustavia alleged that the Brownes defaulted "by failing to make the monthly installment due on October 11, 2010 and have remained in default to [the] present date." Gustavia Am. Compl. ¶ 18.[8] Gustavia attached, among other things, a copy of the Junior Note, including an allonge endorsed by 20 Cap Fund in blank, *see* Gustavia Am. Compl. Ex. A,[9] and a Notice of Attempt to

---

[7] In the Federal Foreclosure Action, Gustavia alleged that it was a "duly organized corporation domiciled in Florida," identifying Jared Dotoli as its sole member. Gustavia Compl. ¶ 2. In the instant action, plaintiff admits that Gustavia is an LLC, not a corporation, and that its sole member is Devico. Pl. Counter 56.1 St. ¶ 4. Plaintiff does not explain this discrepancy.

[8] This appears to be a fictitious date, selected because it was within the applicable six-year statute of limitations for on a note secured by a mortgage, set out in N.Y. C.P.L.R. (CPLR) § 213(4).

[9] The allonge read: "PAY TO THE ORDER OF [blank space] WITHOUT RECOURSE," and was signed by Corey O'Brien, identified as a Managing Member of 20 Cap Fund and an "Authorized Signer." Gustavia Am. Compl. Ex. A, at ECF p. 4.

Collect Debt, dated June 14, 2016. *See id.* Ex. D (Gustavia Default Notice). The Gustavia Default Notice notified the Brownes that they were in default under the Junior Mortgage and Junior Note as of October 11, 2010, and that the "unpaid principal balance" was $98,013.31 (that is, the amount unpaid as of September 1, 2008, according to the Pay History), "plus accrued but unpaid interest, late charges, advances and costs." Gustavia Default Notice at ECF pp. 2-3.

On January 26, 2017, the Supreme Court, Bronx County, denied Gustavia's motion to vacate the Order of Reference, because Gustavia was not a party to the State Foreclosure Action and had not moved to intervene. Davis Decl. Ex. H.

On February 14, 2017, Nationstar appeared and answered in the Federal Foreclosure Action. (Dkt. 26 in 16-CV-9318.) It was the only defendant to do so.

On May 2, 2017, the Supreme Court, Bronx County, issued a judgment of foreclosure and sale (the State Foreclosure Judgment) against the Brownes, MERS, and others. *See* Altman Aff. Ex. G; Davis Decl. Ex. I (State Foreclosure Judgment). The State Foreclosure Judgment found that the senior mortgagee was due $831,366.84 on the Senior Note as of September 14, 2015, plus daily interest thereafter, and ordered that the referee sell the Subject Premises at public auction to satisfy that debt. State Foreclosure Judgment at 2-4. If there were any surplus monies, the referee was to deposit them with the Bronx County Clerk, "to the credit of this action," to be withdrawn only on further order of the court. *Id.* at 5-6. The referee was also to file a "report of such sale under oath," showing the disposition of the proceeds. *Id.* at 6.

The State Foreclosure Judgment extinguished the rights of all of the named defendants (including MERS), and their successors, in and to the Subject Premises:

> ORDERED, ADJUDGED AND DECREED that each and all of the Defendant(s) in this action and all persons claiming under them, or any or either of them, after the filing of [Nationstar's] notice of pendency of this action, be and they are hereby

> forever barred and foreclosed of all right, claim, lien, title, interest, and equity of
> redemption in said mortgaged premises and each and every part thereof[.]

*Id.* at 6. Thus, it is undisputed that the Junior Mortgage "was foreclosed as a result of the judgment of foreclosure and sale and the subsequent sale in the 2009 action." Pl. 56.1 Counter-St. ¶ 14.

Thereafter, Gustavia moved to intervene in the State Foreclosure Action – and enjoin any actual foreclosure sale – arguing that it was the holder of "a superior, not subordinate, mortgage," and should have an opportunity to litigate that claim on the merits. Weinberg Decl. Ex. I, at ECF p. 17.[10] On February 9, 2018, the Supreme Court, Bronx County, denied that motion as untimely. Davis Decl. Ex. L, at 4.

On March 19, 2018, Nationstar filed a motion in the Federal Foreclosure Action to dismiss the Gustavia Amended Complaint for lack of subject matter jurisdiction, invoking the *Rooker-Feldman* doctrine, and as barred by the doctrines of *res judicata* and collateral estoppel. (*See* Dkt. 49 in 16-CV-9318.) Gustavia never responded to Nationstar's motion. Instead, on April 4, 2018, Gustavia and Nationstar entered into a Stipulation of Discontinuance, dismissing Gustavia's claims against Nationstar with prejudice. (Dkt. 53 in 16-CV-9318.) Thereafter, noting that Gustavia and Nationstar "settled," the Hon. Robert W. Lehrburger denied Nationstar's motion to dismiss as moot. (Dkt. 55 in 16-CV-9318). The record now before this Court does not disclose the terms of that settlement.

On May 9, 2018, Gustavia moved for a default judgment against all remaining defendants in the Federal Foreclosure Action, including the Brownes. (Dkt. 66 in 16-CV-9318.) In its affidavit

---

[10] In support of its motion to intervene, Gustavia submitted an affidavit dated May 22, 2017, signed by Dotoli as "managing member" of Gustavia, and attaching a copy of the Junior Note. *See* Altman Aff. Ex. J (Dkt. 94-1 at ECF pp. 147-53). On this copy of the Junior Note, the 20 Cap Fund allonge is no longer endorsed in blank – it has been filled in, by hand, to read, "PAY TO THE ORDER OF GUSTAVIA HOME LLC WITHOUT RECOURSE." *Id.* at ECF p. 153.

of damages, filed on May 9, 2018 and signed by Dotoli, Gustavia again asserted that the loan was "due for payment" on October 11, 2010; that the outstanding principal balance was $98,031.31; and that Gustavia was also entitled to $63,672.87 in past due interest (as of May 1, 2018), Dotoli Aff. (Dkt. 67-3 in 16-CV-9318) ¶¶ 5-7, for a total of $161,704.18 as of that date.

On May 30, 2018, the Clerk of Court entered the defaults. (Dkts. 74-78 in 16-CV-9318.) After a show-cause hearing on May 31, 2018, at which none of the defaulted defendants appeared, the Hon. Jesse M. Furman (to whom the case had been reassigned) entered the Federal Foreclosure Judgment on July 16, 2018, in favor of Gustavia and against, *inter alia*, the Brownes.

The Federal Foreclosure Judgment found that the amount due on the Junior Note was $161,704.18 as of May 1, 2018, "as set forth in the Dotoli Affidavit," plus daily interest thereafter, and ordered that the Subject Premises be sold at public auction to satisfy that debt. Federal Foreclosure Judgment at ECF pp. 2-3. Additionally, Judge Furman appointed a referee to conduct the sale, deposit the proceeds in a bank account designated for that purpose, and then pay:

> 1st The sum of $500.00 to said Referee for [her] fees herein.
>
> 2nd The expenses of the sale and the advertising expenses as shown on the bills presented to said Referee and certified by [her] to be correct, duplicate copies of which shall be left with said depository.
>
> 3rd And also the sum of $161,704.18 (inclusive of costs), the amount computed by the Court and adjudged to Plaintiff as aforesaid, with interest from May 1, 2018 and also the amount of any sums expended by Plaintiff, for taxes, assessments, water rates and sewer rents, with interest and penalties accrued thereon, or so much thereof as the purchase money of the mortgaged premises will pay of the same[.]

*Id.* at ECF p. 4. Thereafter, the referee was to "take the receipt of Plaintiff or its attorney" for the sums due and "file it with [her] report of sale." *Id.* If the sale proceeds were "insufficient to pay the amount adjudged due to Plaintiff," the referee was to specify the amount of the deficiency, and plaintiff could "recover from Defendants the whole deficiency [or] so much thereof as the Court may determine to be just and equitable," provided that a motion for a deficiency judgment was

made in accordance with § 1371 of the New York Real Property Actions and Proceedings Law (RPAPL). *Id.* at ECF p. 5-6. No report of sale was ever filed, and no motion for a deficiency judgment was ever made under RPAPL § 1371.

On January 29, 2019, the Subject Property was sold at public auction by the referee appointed in the State Foreclosure Action, for $1,293,832.88. Weinberg Opp. Decl. Ex. L (Referee's Deed). The purchaser was the Federal National Mortgage Association. *Id.*

No party has submitted the referee's report of sale. Consequently, the record before this Court does not reflect whether any surplus monies were deposited as a result of the auction, or whether Windward (or its predecessor) recovered any such funds in a surplus-money proceeding within the State Foreclosure Action.[11]

### 5.   The Windward Default Notice

On January 22, 2020, plaintiff's counsel mailed a demand letter (the Windward Default Notice) to the Subject Property and to the Brownes' last known address. Pl. 56.1 St. ¶ 7; Mailing Aff. ¶ 11 & Ex. A (Windward Default Notice). The letter notified the Brownes that the "[r]emaining principal balance as of January 22, 2020" was $98,031.31 (again, the amount unpaid as of September 1, 2008, according to the Pay History, *see* Devico Aff. Ex. B); that the accrued interest was $49,671.92, which was also the amount in "arrears"; and that failure to pay the arrears

---

[11] "Under New York law, the lien of a junior mortgagee who is made a party to a foreclosure action brought by a senior mortgagee, although cut-off and extinguished as to the land, continues as a lien upon the surplus funds arising from the foreclosure." *Dime Sav. Bank of New York v. Boklan*, 1989 WL 35946, at *3 (E.D.N.Y. Apr. 3, 1989). Thus, in the event of surplus funds, the junior mortgagee may "look to the surplus monies," *id.*, without commencing a separate action. *Id.* at *4; *see also NYCTL 1997-1 Tr. v. Stell*, 184 A.D.3d 9, 13, 124 N.Y.S.3d 41, 44 (2d Dep't 2020) (agreeing that junior mortgagee's lien, although "terminated upon foreclosure" by a senior lienholder, "attached to the surplus upon the foreclosure sale," such that junior mortgagee was not required to "commence a separate action within the six-year statute of limitations").

by February 21, 2020, "may result in a lawsuit being commenced against" them. Windward Default

Notice at ECF pp. 3-4.

Defendants did not cure the default. Pl. 56.1 St. ¶ 8.[12]

### B.    Procedural History

Plaintiff filed this action on June 19, 2020, asserting a single claim, sounding in breach of

contract, for recovery under the Junior Note. Compl. ¶¶ 14-21. Plaintiff alleges that the Brownes

failed to make their monthly payment due on July 1, 2014, "and the default continues to date." *Id.*

¶ 16.[13] Windward attaches a copy of the Junior Note, but without any version of the allonge

endorsed by 20 Cap Fund. *Id.* Ex. A. In its Complaint, Windward computes the amount owed as

$148,542.01, consisting of the $98,031.31 outstanding principal balance on the Junior Note (once

again, the amount unpaid as of September 1, 2008), plus $50,420.70 in accrued interest from July

1, 2014, through the date of filing. *Id.* ¶ 20.

Defendants filed an Answer on August 24, 2020 (Dkt. 16), and an Amended Answer on

November 6, 2020. The Amended Answer denies all of plaintiff's allegations (except that the

Brownes reside in Hartsdale, New York, which is admitted), Am. Ans. ¶ 3, and includes thirteen

"affirmative defenses," most of which are not affirmative defenses at all. *Id.* ¶¶ 5-24.[14] Defendants

---

[12] Defendants "dispute this statement," Def. 56.1 Counter-St. ¶ 8, because, in their view, "[t]here was no default to cure," for various purely legal reasons (*e.g.*, "the Statute of Limitations has run," *id.* ¶ 8(d)) having nothing to do with whether the Brownes paid all or any part of the debt after service of the Windward Default Notice. Thus, defendants have not created a genuine dispute of fact as to the Brownes' failure to pay.

[13] Like the default date alleged in the Gustavia Amended Complaint, this appears to be a fictitious date, likely selected because it was within the applicable six-year statute of limitations, set out in CPLR § 213(4). At deposition, Devico testified that in reality the Brownes "have been in default way before this [date]." Devico Dep. Tr. at 38:8-13. When asked why he picked July 1, 2014, Devico replied, "[t]hat date suits me and I would be happy if they paid the interest as of July 1st, 2014." *Id.* at 38:22-23.

[14] There are two separate "1st" affirmative defenses, *see* Am. Ans. ¶¶ 5-8, making thirteen in total. "An affirmative defense is defined as '[a] defendant's assertion raising new facts and arguments

further aver, under two headings labeled "Affirmative Defense/Counterclaim," that plaintiff's action on the Junior Note is time-barred, *see id.* ¶¶ 22-23,[15] and that plaintiff's Complaint "is based upon a fraudulent claim, with a fraudulent set of papers." *Id.* ¶ 24.[16]

On September 22, 2020, the parties consented to the jurisdiction of the undersigned magistrate judge for all purposes pursuant to 28 U.S.C. § 636(c). (Dkt. 22.)

On March 24, 2022, after discovery, the parties filed their cross-motions for summary judgment. (Dkts. 68-69.) In addition to the factual materials described in Part I.A, *supra*, plaintiff filed three briefs: an opening memorandum of law in support of its summary judgment motion (Pl. Mem.) (Dkt. 76); an opposition memorandum in response to defendants' summary judgment motion (Pl. Opp. Mem.) (Dkt. 86); and a reply memorandum in further support of its own motion.

---

that, if true, will defeat the plaintiff's or prosecution's claim, *even if all allegations in the complaint are true*.'" *Saks v. Franklin Covey Co.*, 316 F.3d 337, 350 (2d Cir. 2003) (quoting Black's Law Dictionary 430 (7th ed. 1999)) (emphasis added). The defendant bears the burden of proof as to a true affirmative defense. *See, e.g.*, *BJB Ltd. v. iStar Jewelry LLC*, 533 F. Supp. 3d 83, 91 (E.D.N.Y. 2021) ("Under New York law, the statute of limitations is an affirmative defense, and defendant bears the burden of proving that the plaintiff's claim is untimely."); *Miss Jones LLC v. Stiles*, 2020 WL 4704886, at *8 (S.D.N.Y. Aug. 13, 2020) (where plaintiff "plainly established its *prima facie* entitlement to foreclosure," and where defendant raised the statute of limitations as a defense, defendant "bears the burden of establishing . . . that the limitations period has expired since the plaintiff's claim[ ] accrued") (citation omitted). "Defenses" in name, which merely deny plaintiff's material allegations or otherwise challenge plaintiff's *prima facie* case are not, in reality, affirmative defenses, and do not alter the burden of proof as to the elements of plaintiff's claim. Thus, for example, defendants' assertion that they never signed the Junior Note, and that the instrument attached to the Complaint is a "forgery," *see* Am. Ans. ¶¶ 12, 14, were not affirmative defenses. They were denials of plaintiff's core allegation that the Brownes "executed and delivered" the Junior Note to plaintiff's predecessor FEFC in 2005. *See* Compl. ¶ 11.

[15] This is an affirmative defense, *see, e.g.*, *Miss Jones*, 2020 WL 4704886, at *8, but is not a counterclaim.

[16] Defendants abandoned their "fraudulent papers" defense/counterclaim, Am. Ans. ¶ 24, along with the "forgery" allegations upon which it was based, *id.* ¶ 15, after defendants' counsel inspected the original Junior Note, *see* Hasbani Aff. ¶ 19, and commissioned a handwriting analysis by Patricia Zippo, a forensic document examiner, who concluded that the Brownes' signatures on that document were genuine. *See* Weinberg Decl. Ex. F (report of Patricia Zippo), at 4.

(Pl. Reply) (Dkt. 91). Similarly, defendants filed three briefs: an opening memorandum of law in support of their summary judgment motion (Def. Mem.) (Dkt. 99); an opposition memorandum in response to plaintiff's motion (Def. Opp. Mem.) (Dkt. 80); and a reply memorandum in further support of their own motion (Def. Reply) (Dkt. 90).

### C.      The Parties' Arguments

Plaintiff argues that it is entitled to summary judgment because it has established every element of its *prima facie* case for recovery on the Junior Note: that it possesses a valid note; that it made a proper demand for payment, *i.e.*, the Windward Default Notice, sent on January 20, 2022; and that defendants failed to pay following that demand. *See* Pl. Mem. at 5-6.[17] Plaintiff further asserts that each of defendants' affirmative defenses and counterclaims fails. *Id.* at 6-19.[18]

Defendants argue that they are entitled to summary judgment (or, at a minimum, that plaintiff is not entitled to summary judgment) for five primary reasons: (1) because this Court lacks diversity jurisdiction, *see* Def. Mem. at 14-15; (2) because Windward cannot show that it is the holder of the Junior Note and therefore lacks standing to sue on it, *see id.* at 5-7; (2) because the debt was accelerated in 2009, when the State Foreclosure Action was filed, such that this action – filed more than six years later – is time-barred, *see id.* at 14; Def. Opp. Mem. at 7-8; (4) because this action is, in substance, a collateral attack on the State Foreclosure Judgment, and is therefore

---

[17] In its summary judgment papers, as in its Complaint, plaintiff continues to assert that defendants defaulted under the Junior Note "by failing to make the monthly payments due on July 1, 2014 and each month thereafter." Pl. 56.1 St. ¶ 5; *see also* Devico Aff. ¶ 7; Pl. Mem. at 2. However, it appears to have modified its calculation of the debt owed. According to Devico, the unpaid balance ("UPB") as of March 31, 2022 was $90,802.98, *see* Devico Aff. Ex. E, which is $7,228.33 *less* than the unpaid balance figure ($98,031.31) used by Gustavia in the Federal Foreclosure Action and by Windward in its Default Notice and its Complaint. Plaintiff does not explain this discrepancy.

[18] In this portion of its brief, plaintiff argues that the affirmative defenses asserted in defendants' *original* answer are invalid. Some of those defenses (for example, lack of personal jurisdiction) were abandoned in the Amended Answer, which plaintiff appears to have overlooked.

barred by *res judicata* and/or by the *Rooker-Feldman* doctrine, *see* Def. Mem. at 9-12; and (5) because plaintiff's predecessor Gustavia obtained a judgment of foreclosure against the Brownes in the Federal Foreclosure Action, such that New York's "election of remedies" doctrine bars a second action for damages at law. *Id.* at 7-9; Def. Opp. Mem. at 2, 6.[19]

## II.    ANALYSIS

As discussed in more detail below, the Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 because, at the time this action was commenced, Devico – and hence Windward – was a citizen of Morocco, while the Brownes were citizens of New York. *See Windward Bora v. Barrie*, 2022 WL 4485149, at *2. Further, Windward's physical possession of the note when it commenced this action, coupled with the clear terms of the MPL Agreement under which Gustavia assigned it to Windward, demonstrate that Windward is the holder of the Junior Note and has standing to sue on the debt. "No special form or language is necessary to effect an assignment as long as the language shows the intention of the owner of a right to transfer it." *Suraleb, Inc. v. Int'l Trade Club, Inc.*, 13 A.D.3d 612, 612, 788 N.Y.S.2d 403, 404 (2d Dep't 2004) (quoting *Tawil v. Finkelstein Bruckman Wohl Most & Rothman*, 223 A.D.2d 52, 646 N.Y.S.2d 691, 692 (1st Dep't 1996)).

Nor is this action time-barred. Although the Brownes defaulted in 2008, "[a] default on a single installment payment," or, for that matter, on multiple installment payments, "does not trigger

---

[19] Defendants also argue that Windward "failed to serve a RPAPL § 1304 notice." Def. Opp. Mem. at 10. The argument borders on frivolous. RPAPL § 1304 requires that a mortgagee send a "90-day notice" to a homeowner, before commencing a foreclosure action, which warns the homeowner that he or she is "at risk of losing [their] home." However, the statute does not apply where, as here, the loan was not a "home loan," *see U.S. Bank Nat'l Ass'n v. Shereshevsky*, 198 A.D.3d 1000, 1001, 155 N.Y.S.3d 588, 589 (2d Dep't 2021) (§ 1304 did not apply where borrowers did not "use[] the property as their principal dwelling"). Moreover, this is not a foreclosure action. *See M&T Bank v. Benjamin*, 145 A.D.3d 1519, 1520, 44 N.Y.S.3d 301, 302 (4th Dep't 2016) (§ 1304 did not apply where the action "is not [one] for foreclosure of a mortgage").

the running of the statute of limitations on the entire debt." *Cannell v. Grail Partners, LLC*, 180 A.D.3d 457, 458, 118 N.Y.S.3d 593, 596 (1st Dep't 2020). The limitations period for the balance of the debt commenced to run only when Gustavia accelerated the debt in 2016. *See In re Bennett Funding Grp., Inc.*, 2003 WL 174328, at *10 (Bankr. N.D.N.Y. Jan. 28, 2003) (suit filed "six years less one day" after debt was accelerated was timely), *adopted*, 292 B.R. 476 (N.D.N.Y. 2003).

It is well-settled under New York law that a prior foreclosure proceeding on a mortgage "does not have res judicata effect so as to bar [an] action to recover on the note." *CitiMortgage, Inc. v. Ramirez*, 192 A.D.3d 70, 74-75, 136 N.Y.S.3d 572, 575 (3d Dep't 2020). And since the State Foreclosure Judgment, which decided a claim brought to foreclose on the Senior Mortgage, did not bar Windward's current claim, which is brought on the Junior Note, this action cannot fairly be characterized as inviting this Court to "review and reject[]" that Judgment. *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005). Thus, *Rooker-Feldman* does not apply.

Defendants are correct, however, that this action is barred by New York's election of remedies doctrine, which disfavors a "multiplicity of lawsuits" to collect on the same debt, *Sanders v. Palmer*, 68 N.Y.2d 180, 185, 507 N.Y.S.2d 844, 846 (1986), and erects several barriers to that practice. Initially, the holder of a note and mortgage must choose between proceeding in equity, by suing on the mortgage, or at law, by suing on the note. *Gizzi v. Hall*, 309 A.D.2d 1140, 1141, 767 N.Y.S.2d 469, 471 (3d Dep't 2003) (mortgagee "must only elect one of these alternate remedies"). If the mortgagee elects to sues in equity and obtains a final judgment of foreclosure – as plaintiff's predecessor did in this District – "no other action shall be commenced or maintained to recover any part of the mortgage debt . . . without leave of the court in which the former action was brought." RPAPL § 1301(3). "The procurement of such leave shall be a condition precedent to the commencement of such other action and the failure to procure such leave shall be a defense

to such other action." *Id.* Moreover, "permission to institute a separate action on the debt will not be granted unless special circumstances were shown which manifestly required that course." *Rainbow Venture Assocs., L.P. v. Parc Vendome Assocs., Ltd.*, 221 A.D.2d 164, 633 N.Y.S.2d 478, 479 (1st Dep't 1995) (cleaned up).

Plaintiff commenced this action without first procuring leave as required under RPAPL § 1301(3).[20] Moreover, while New York law permits courts to consider a complaint filed in the second action as an application for leave *nunc pro tunc*, in this case I conclude that Windward has not shown any "special circumstances . . . which manifestly require[]" that such leave be granted. *Sanders*, 68 N.Y.2d at 185, 507 N.Y.S.2d at 847. *See Dyck-O'Neal, Inc. v. Thomson*, 56 A.D.3d 1262, 1264, 868 N.Y.S.2d 838, 839-40 (4th Dep't 2008) (affirming dismissal of suit at law pursuant to RPAPL § 1301(3) where plaintiff "failed to establish the circumstances" of the prior sale of the mortgaged property and failed to "provide an explanation for its failure to proceed with the judgment of foreclosure that had been obtained by its predecessor"). Consequently, summary judgment will be granted to defendants, and this action will be dismissed.

### A.    Legal Standards

A court may grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Holt v. KMI-Continental, Inc.*, 95 F.3d 123, 128-29 (2d Cir. 1996). The moving party bears the initial burden of informing the court of the basis for the motion and identifying those portions of the record that

---

[20] In fact, Windward's Complaint did not even mention the Federal Foreclosure Action. That was a violation of RPAPL § 1301(2), which "requires in an action on the mortgage debt that the complaint state if any other action has been commenced to recover on said debt." *Citibank, N.A. v. Covenant Ins. Co.*, 150 Misc. 2d 129, 130, 567 N.Y.S.2d 983, 984 (Sup. Ct. Rockland Cty. 1991).

demonstrate the absence of a genuine dispute as to any material fact. Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 322; *Koch v. Town of Brattleboro*, 287 F.3d 162, 165 (2d Cir. 2002). In evaluating the record, the court must construe the evidence in the light most favorable to the non-moving party and must draw all reasonable inferences in the non-moving party's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *In re "Agent Orange" Prod. Liab. Litig.*, 517 F.3d 76, 87 (2d Cir. 2008).

If the moving party meets its initial burden, the burden shifts to the non-moving party to establish a genuine dispute of material fact. *Celotex*, 477 U.S. at 322; *Beard v. Banks*, 548 U.S. 521, 529 (2006). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To defeat summary judgment, he must present specific, admissible evidence in support of his contention that there is a genuine dispute as to the material facts. *Celotex*, 477 U.S. at 324; *see also Jeffreys v. City of New York*, 426 F.3d 549, 553-54 (2d Cir. 2005). Moreover, "[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for [that party]." *Anderson*, 477 U.S. at 252. Similarly, "conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996).

In this District, the moving party must submit a "short and concise statement, in numbered paragraphs," of the material facts that it contends to be undisputed, with citations to the underlying evidence. Local Civ. R. 56.1(a). The non-moving party must then respond in kind, with numbered paragraphs that correspond "to each numbered paragraph in the statement of the moving party." Local Civ. R. 56.1(b). To the extent not "specifically controverted" by the non-moving party, the

statement of material facts submitted by the moving party will be "deemed to be admitted for purposes of the motion." Local Civ. R. 56.1(c). Likewise, if the non-moving party attempts to controvert a fact but fails to present any admissible evidence supporting that party's assertion, the "mere assertion" of a dispute is "insufficient to create a genuine factual dispute for resolution at trial[.]" *Wheeler v. Kolek*, 2020 WL 6726947, at *6 (S.D.N.Y. Nov. 16, 2020).

### B. This Court Has Subject Matter Jurisdiction

Windward invokes this Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332. Compl. ¶ 9. "[T]hat statute grants jurisdiction over any civil action where the amount-in-controversy exceeds $75,000 and the action involves 'citizens of a State,' on the one hand, and 'citizens or subjects of a foreign state,' on the other." *Windward Bora v. Barrie*, 2022 WL 4485149, at *1 (quoting 28 U.S.C. § 1332(a)(2)). "[T]he existence of diversity jurisdiction depends on the citizenship of the parties at the time the action is commenced." *Linardos v. Fortuna*, 157 F.3d 945, 947 (2d Cir. 1998).

"[T]he citizenship of an artificial business entity other than a corporation is determined by reference to the citizenship of its members." *WGH Commc'ns, Inc. v. Penachio Malara LLP*, 2020 WL 4274741, at *1 (S.D.N.Y. July 23, 2020) (citing *Carden v. Arkoma Assocs.*, 494 U.S. 185, 196 (1990)) (citations omitted). Thus, where a party is an LLC, the citizenship of each individual member or partner must be identified. *See Bayerische Landesbank, New York Branch v. Aladdin Cap. Mgmt. LLC*, 692 F.3d 42, 49 (2d Cir. 2012) (LLCs); *Hoguet Newman Regal & Kenney, LLP v. Lowe*, 2021 WL 4638539, at *1 (S.D.N.Y. Oct. 6, 2021) (LLPs).

Here, it is undisputed that Windward Bora is a single-member LLC and that its sole member, Devico, was a citizen of Morocco and a lawful permanent resident of the United States when this action was commenced. Pl. 56.1 St. ¶ 1; *see also* Def. 56.1 Counter-St. ¶ 1 (disputing Devico's residency, but not his citizenship); *Windward Bora v. Barrie*, 2022 WL 4485149, at *2

(finding that Devico was a citizen of Morocco until "he obtained U.S. citizenship on July 20, 2022"). Because Devico was a "citizen or subject of a foreign state" at the relevant time, so was Windward – regardless of where Devico was domiciled. *See Windward Bora v. Barrie*, 2022 WL 4485149, at *3 ("LLCs take on the *citizenship*, rather than domicile, of their members").

Since the parties were completely diverse when this action was filed, and since Windward values its claim at more than $75,000, *see* Devico Aff. Ex. E, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(2).

## C.   Windward Has Established Its *Prima Facie* Case

In an action to enforce a promissory note, the plaintiff must provide proof of the valid note and of the defendant's failure, despite demand, to make payment. *Exp.-Imp. Bank of U.S. v. Agricola Del Mar BCS*, 536 F. Supp. 2d 345, 349 (S.D.N.Y. 2008). In addition, to establish its standing to sue on a mortgage debt, the plaintiff must show that "when the action was commenced, it was either the holder or assignee of the underlying note." *OneWest Bank, N.A. v. Melina*, 827 F.3d 214, 222 (2d Cir. 2016) (*per curiam*) (quoting *Wells Fargo Bank, N.A. v. Rooney*, 132 A.D.3d 980, 19 N.Y.S.3d 543, 544 (2d Dep't 2015)); *see also OneWest Bank, N.A. v. Guerrero*, 2018 WL 2727891, at *3 (S.D.N.Y. June 6, 2018) (same). Windward has done so.

Defendants' insistence that Windward "is not the holder of the promissory note," Def. Mem. at 5, rests on its contention that the physical note is one endorsement short. *See id.* at 6 ("[I]n order to assign the promissory note to the Plaintiff, Gustavia Home LLC was required to indorse the promissory note (either in blank or with a special indorsement)."). But New York law imposes no such requirement. Assignment of a note need not even be in writing; it "can be effectuated by physical delivery." *Bank of New York v. Silverberg*, 86 A.D.3d 274, 280, 926 N.Y.S.2d 532, 537 (2d Dep't 2011) (citation omitted); *see also Melina*, 827 F.3d at 223 ("New York courts have repeatedly held that proof of physical possession . . . is sufficient on its own to prove a plaintiff's

standing to foreclose on the mortgage associated with the note."). If there is a writing, "[n]o special

form or language is necessary to effect an assignment as long as the language shows the intention

of the owner of a right to transfer it." *Suraleb*, 13 A.D.3d at 612, 788 N.Y.S.2d at 404; *Tawil*, 223

A.D.2d at 55, 646 N.Y.S.2d at 692.

Here, Windward has shown that it had physical possession of the Junior Note before this

action was commenced. Pl. 56.1 St. ¶ 4. It has also shown, through the MPL Agreement, that

Gustavia assigned the Junior Note to Windward for $100. *See* MPL Ag. ¶ 2.1 ("[Gustavia] shall

sell, assign, and convey to [Windward] and [Windward] shall buy and accept from [Gustavia] all

of the right, title, and interest that [Gustavia] now has, ever had or may hereinafter acquire in the

Loans"). No more is required under New York law. Consequently, defendants have failed to raise

a genuine dispute of fact as to Windward's ownership of, or standing to sue on, the Junior Note.

Nor have they raised more than a "metaphysical doubt," *Matsushita*, 475 U.S. at 586, as to

their default. It is true, as defendants point out, that Windward cannot show that the Pay History

is accurate. Def. Mem. at 13. But both Mr. and Ms. Browne admitted at deposition that they

stopped making payments on their debt, and Mr. Browne put that default in "the early part of

2008." R. Browne Dep. Tr. at 19:6-10. Plaintiff has thus established its *prima facie* case.

### D.    This Action Is Not Time-Barred

According to defendants, Windward "fabricated the default date" in order to avoid "the

running of the statute of limitations on the [Junior Note], which expired six years after the

commencement of the 2009 action." Def. Mem. at 14. Defendants are correct that the default date

alleged in the Complaint – July 1, 2014 – bears no relationship to when the Brownes actually

defaulted. However, they are mistaken about the expiration of the statute of limitations.

The limitations period for breach of a promissory note secured by a mortgage is six years.

CPLR § 213(4); *Cannell*, 180 A.D.3d at 458, 118 N.Y.S.3d at 596-97. With respect to an

instrument payable in installments, "separate causes of action accrue for each installment that is not paid, and the statute of limitations begins to run, on the date each installment becomes due." *Wilmington Tr., Nat'l Ass'n v. Dawson*, 174 A.D.3d 673, 674-75, 104 N.Y.S.3d 174, 176 (2d Dep't 2019). Thus, "[a] default on a single installment payment does not trigger the running of the statute of limitations on the entire debt[.]" *Cannell*, 180 A.D.3d at 458, 118 N.Y.S.3d at 597. Once the debt is accelerated, however, "all sums become immediately due and payable, and the six-year statute of limitations begins to run on the entire mortgage debt." *U.S. Bank Nat. Ass'n v. Wongsonadi*, 55 Misc. 3d 1207(A), 55 N.Y.S.3d 695 (table) (N.Y. Sup. Queens Cty. 2017); *accord CIT Bank, N.A. v Nwanganga,* 328 F. Supp. 3d 189, 201 (S.D.N.Y. 2018).

Where, as here, the mortgagee has the option of accelerating the debt after default, *see* Junior Note § 6(C), "some affirmative action must be taken evidencing the holder's election to take advantage of the accelerating provision." *Miss Jones*, 2020 WL 4704886, at *9 (quoting *21st Mortg. Corp. v. Balliraj*, 177 A.D.3d 687, 688, 111 N.Y.S.3d 347, 349 (2d Dep't 2019)). Gustavia took that "affirmative action," and accelerated the debt, when filed the Federal Foreclosure Action on December 2, 2016. As a result, Windward – which stands in Gustavia's shoes – had six years from that date to pursue whatever remedies remained available to it. It filed this action on June 19, 2020, well before its time to do so expired. *See In re Bennett Funding Grp.*, 2003 WL 174328, at *10 (suit filed "six years less one day" after debt was accelerated was timely).

Acceleration of a debt "does not reset the limitations period for the earlier missed payments." *Cannell*, 180 A.D.3d at 459, 118 N.Y.S.3d at 597. Consequently, many of the Brownes' older missed payments (those prior to June 19, 2014) are now forever beyond the reach of their lender or its assignees. But the statute of limitations does not bar Windward from pursuing unpaid installment payments that were due – or accelerated – on and after June 19, 2014.

### E.     This Action is Not Barred by *Res Judicata* or *Rooker-Feldman*

Under the doctrine of *res judicata*, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Flaherty v. Lang*, 199 F.3d 607, 612 (2d Cir. 1999) (quoting *Rivet v. Regions Bank of La.*, 522 U.S. 470, 476 (1998)). Ordinarily, "New York adheres to a transactional analysis of *res judicata*, 'barring a later claim arising out of the same factual grouping as an earlier litigated claim even if the later claim is based on different legal theories or seeks dissimilar or additional relief.'" *Burka v. New York City Transit Auth.*, 32 F.3d 654, 657 (2d Cir. 1994) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)); *see also Pondview Corp. v. Blatt*, 95 A.D. 3d 980, 980, 943 N.Y.S.2d 754, 755 (mem) (2d Dep't 2014).

Due to New York's election of remedies doctrine, however, a mortgagee must choose between proceeding in equity, on the mortgage, and proceeding at law, on the note. *Gizzi*, 309 A.D.2d at 1141, 767 N.Y.S.2d at 471. Due to this required election of remedies, a mortgagee suing in equity "could not have raised a cause of action to recover on the note" in the same proceeding. *CitiMortgage*, 192 A.D.3d at 73-74, 136 N.Y.S.3d at 575. It is for this reason that the outcome of a suit to foreclose the mortgage is not *res judicata* as to a later suit on the note. *Id*. Consequently *res judicata* does not shield defendants from the present action on the note.

Nor does the *Rooker-Feldman* doctrine.[21] *Rooker-Feldman* bars a federal claim brought by a plaintiff who (1) lost in state court, (2) complains of injuries caused by the state-court judgment, (3) invites the district court to review and reject the state-court judgment, and (4) commenced the district court proceedings after the state-court judgment was rendered. *Vossbrinck v. Accredited*

---

[21] *See Rooker v. Fid. Tr. Co.*, 263 U.S. 413 (1923); *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983).

*Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014); *Hoblock*, 422 F.3d at 85. In *Vossbrink*, plaintiff (who had his real property foreclosed in a state court action) ran afoul of *Rooker-Feldman* when he "ask[ed] the federal court to grant him title to his property because the foreclosure judgment was obtained fraudulently." 773 F.3d at 427. Here, by contrast, Windward does not ask this Court to review or reject the State Foreclosure Judgment; it merely seeks a different remedy (and one equally available in state court) for defendants' default. *Rooker-Feldman* does not bar that request.

### F.    This Action Is Barred by RPAPL § 1301(3)

RPAPL § 1301(3) provides that, while an action to recover a mortgage debt is pending, "or after final judgment for the plaintiff therein," no other action shall be "commenced or maintained to recover any part of the mortgage debt . . . without leave of the court in which the former action was brought." The purpose of the rule "is to avoid multiple suits to recover the same mortgage debt and confine the proceedings to collect the mortgage debt to one court and one action[.]" *Dollar Dry Dock Bank v. Piping Rock Builders, Inc.*, 181 A.D.2d 709, 710, 581 N.Y.S.2d 361, 362-63 (2d Dep't 1992). Obtaining leave of the court is a "condition precedent" to the commencement of the "other action," that is, the new action, and "the failure to procure such leave shall be a defense to such other action." RPAPL § 1301(3).[22]

---

[22] The New York courts treat RPAPL § 1301(3) as an affirmative defense, which must be raised and established by the defendant. *See, e.g.*, *N.Y. Comm'l Bank v. J. Realty F. Rockaway, Ltd.*, 108 A.D.3d 757, 757, 969 N.Y.S.2d 796, 797 (2d Dep't 2013). In this case, defendants did not plead their RPAPL § 1301(3) defense in their Amended Answer. However, "failure to plead an affirmative defense does not necessarily result in waiver." *Rose v. AmSouth Bank of Fla.*, 391 F.3d 63, 65 (2d Cir. 2004). Where, as here, the defense is briefed extensively at the summary judgment stage – by both sides – and the plaintiff voices no objection to defendants' failure to raise the issue "formally in the pleadings," the district court may deem such objections waived and entertain the defense. *Id.*; *see also Sidman v. Concord Arena Parking, LLC*, 2023 WL 2552831, at *6 n.7 (E.D.N.Y. Mar. 17, 2023) ("In the absence of any convincing argument or evidence of undue

Where, as here, a plaintiff commences a second action without obtaining leave of the court, in violation of § 1301(3), that court may, as an exercise of discretion, "grant the leave *nunc pro tunc*," thereby permitting the second suit to proceed. *Stein v. Blatte*, 118 Misc. 2d 633, 636, 461 N.Y.S.2d 189, 191 (Sup. Ct. Nassau Cty. 1983). In exercising that discretion, however – particularly where a party seeks to bring an action on the note after obtaining a final judgment of foreclosure in the prior action – courts require a showing that "special circumstances" "manifestly required that course." *Rainbow Venture Assocs.*, 221 A.D.2d at 164, 633 N.Y.S.2d at 479; *see also Resol. Tr. Corp. v. J.I. Sopher & Co.*, 108 F.3d 329, 1997 WL 100879, at *2 (2d Cir. 1997) (Table) ("New York courts have interpreted section 1301(3) to allow a separate cause of action in 'special' circumstances"). "In general, 'the question as to whether special circumstances have been shown is regulated by consideration of equitable principles on a case by case basis.'" *Resol. Tr. Corp.*, 1997 WL 100879, at *2 (quoting *Stein v. Nellen Dev. Corp.*, 123 Misc.2d 268, 271, 473 N.Y.S.2d 331, 332-33 (Sup. Ct. Suffolk Cty. 1984)).

This Court concludes that there are no special circumstances here that manifestly require that course. First, Windward has not even requested leave under § 1301(3). Rather, it takes the position that no such leave was required, because "equitable concerns militate against the mechanical application of RPAPL § 1301 in this case." Pl. Opp. Mem. at 9. This appears to be a misreading of New York law. *See*, *e.g.*, *Dyck-O'Neal*, 56 A.D.3d at 1264, 868 N.Y.S.2d at 839 (defendants' submission of "the pleadings from the prior foreclosure action," as well as the resulting "judgment of foreclosure and sale," was adequate to "establish[] that plaintiff was required to obtain leave of the court to commence this action," which was on the note); *F.D.I.C. v.*

---

prejudice, delay, or bad faith, I consider it entirely appropriate to consider these [unpled] defenses" on summary judgment). I have done so here.

*1873 W. Ave. Corp.*, 225 A.D.2d 893, 895, 639 N.Y.S.2d 163, 165 (3d Dep't 1996) (where plaintiff FDIC "procured a favorable judgment" in the prior *in rem* proceeding, then discontinued it, such that a "separate action to recover on the debt . . . could not be commenced without leave of court," but where "leave was not requested," the trial court was "technically justified in dismissing the complaint").[23]

Second, the cases upon which plaintiff relies for its equitable calculus are largely inapposite. For example, plaintiff argues that § 1301(3) should not be "mechanically applied," Pl. Opp. Mem. at 9, when a "junior mortgagee's subsequent action seeking a monetary judgment on a note" is brought after "the previously commenced foreclosure action is abandoned because the junior mortgagee's 'status as a junior mortgagee made it improbable that foreclosure would satisfy the underlying debt.'" *Id.* at 11 (quoting *Old Republic Nat. Title Ins. Co. v. Conlin*, 129 A.D.3d 804, 805, 13 N.Y.S.3d 99, 101 (2d Dep't 2015)). But plaintiff (or, more accurately, plaintiff's predecessor, by whose conduct plaintiff is bound) did not "abandon" the Federal Foreclosure Action. To the contrary: *after* the State Foreclosure Judgment was issued by the Bronx County Supreme Court, and *after* that court denied Gustavia's post-judgment motion to intervene, Gustavia came back to this District, settled with Nationstar (presumably so as to clear the way to a default judgment against the Brownes), and then vigorously sought and promptly obtained a final judgment of foreclosure against the Brownes. For this reason as well, dismissal of the present action "is warranted under RPAPL 1301(3)." *Bayview Loan Servicing, LLC v. Starr-Klein*, 193 A.D.3d 807, 808 142 N.Y.S.3d 414, 415 (mem) (2d Dep't 2021) (dismissing second action since

---

[23] *See also Sec. Nat'l Servicing Corp. v. Liebowitz*, 281 A.D.2d 615, 616, 722 N.Y.S.2d 69, 70 (2d Dep't 2001) ("since the plaintiff did not obtain court approval prior to commencing this action, the complaint must be dismissed"); *Aurora Loan Servs., LLC v. Spearman*, 68 A.D.3d 796, 797, 890 N.Y.S.2d 124, 125 (2d Dep't 2009) ("Since the plaintiff did not obtain leave of the court prior to commencing the 2003 action, the complaint in the 2003 action should have been dismissed").

plaintiff commenced it "without leave of the court in which the prior action was brought," and there was "no basis in the record to determine that [plaintiff] discontinued or effectively abandoned the prior [foreclosure] action").

Third, it seems likely (given the sale price of $1,293,832.88, *see* Referee's Deed) that surplus funds were recovered when the Subject Property was auctioned. If so, Gustavia would have had a claim to such funds. *See Dime Sav. Bank of New York*, 1989 WL 35946, at *3-5. But plaintiff has not submitted the referee's report of sale, nor has it provided this Court with any other information about the outcome of that proceeding. It may well be, as plaintiff argues, that "where a lienholder's *in rem* interest is destroyed by reason of a foreclosure sale, its only remedy is to commence an action on the note," which would weigh in favor of granting leave, *nunc pro tunc*, to proceed with that action. Pl. Opp. Mem. at 11 (citing *Lehman v. Roseanne Invs. Corp.*, 106 A.D.2d 617, 618, 483 N.Y.S.2d 106, 107 (2d Dep't 1984)). However, in the absence of any evidence concerning the terms of the Nationstar settlement or the results of the auction, the Court cannot simply accept, on faith, that the Federal Foreclosure Judgment is now "void," Pl. Opp. Mem. at 9, or and that there is "no possibility of a double recovery," *Lehman*, 106 A.D.2d at 618, 483 N.Y.S.2d at 108, if this action at law proceeds to a judgment. *See Dyck-O'Neal*, 56 A.D.3d at 1264, 868 N.Y.S.2d at 840 (trial court properly dismissed action at law, under § 1301(3), where the plaintiff "failed to establish the circumstances" of the prior sale of the subject property).

Fourth, it is undisputed that Windward purchased the Junior Note for $100. MPL Ag. at 2. Moreover, it did so *after* both the State Foreclosure Judgment and the Federal Foreclosure Judgment were issued, meaning that it fully understood, at the time of the transaction, the various barriers to recovery arrayed before it. I therefore find that no special circumstances exist that "manifestly required" that Windward bring this action, *Wand v. Saleh*, 218 A.D.2d 647, 648, 630

27

N.Y.S.2d 367, 368 (2d Dep't 1995), or that this Court give it leave to do so *nunc pro tunc*. Consequently summary judgment will be entered for defendants and this action will be dismissed.

### G.     Plaintiff Would Not, In Any Event, Be Entitled to a Money Judgment in Its Favor

Although plaintiff has succeeded in establishing that it possesses a valid Junior Note, as to which it has standing, and that plaintiffs were in default on and after July 1, 2014, the Court could not enter a judgment for a sum certain – even if this action were not barred by RPAPL § 1301(3) – because plaintiff has not demonstrated the amount that it is owed. Devico attests that the amount due and owing as of March 31, 2022, was $166,477.03, Devico Aff. ¶ 12, but the only substantiation for that sum is an unenlightening set of figures attached thereto as Exhibit E, beginning with an unpaid balance of $90,802.98, which is inconsistent with Windward's pleading, *see* Compl. ¶ 20, and unexplained. Moreover, although that figure already includes interest (through March 31, 2022), and $15,000 in legal fees, *see* Devico Aff. Ex. E, Devico states that it does not include unspecified additional "late fees, legal fees, costs and expenses." Devico Aff. ¶ 12. Perhaps most significantly, the Court has no information concerning any sums recovered by Windward or its predecessor as a result of settlement with the senior mortgagee or surplus-money proceedings in the State Foreclosure Action. Consequently, the issue of damages would remain for trial or further motion practice. *See Merrill Lynch Bus. Fin. Servs. Inc. v. Heritage Packaging Corp.*, 2007 WL 2815741, at *6-7 (E.D.N.Y. Sept. 25, 2007) (referring disputed issue of damages to magistrate judge for report and recommendation); *Desco Shoe Corp. v. Naturalizer of Pittsburgh, Inc.*, 1986 WL 11448, at *3 (S.D.N.Y. Oct. 9, 1986) (directing parties to appear for a "a hearing to determine damages").

## III.     CONCLUSION

For the reasons set forth above, plaintiff's motion for summary judgment (Dkt. 69) is DENIED, defendants' cross-motion (Dkt. 96) is GRANTED, and plaintiff's Complaint is DISMISSED. The Clerk of Court is respectfully directed to enter judgment in favor of defendants and close the case.

Dated: New York, New York
        March 31, 2023

**SO ORDERED.**

**BARBARA MOSES**
**United States Magistrate Judge**